**SILVER & SILVER APC**
Levi Y. Silver, SBN 273862
lsilver@silverlawfirm.com
Zvi "Hershy" Silver, SBN 234855
hsilver@silverlawfirm.com
600 West Broadway, Suite 1520
San Diego, CA 92101
Tel:  (619) 231-1600
Fax: (619) 231-1616
www.silverlawfirm.com

*Attorneys for Defendant*
*TEPL, Inc. dba MC Administrators*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMCHAL AZODI; IGNACIO BARRAGAN; NADINE DAHDAH; KENT GLITZ; HANINA HOFFMAN; EMILY JOHNSON; SAMUEL SANTOS; BRIAN SOASH; AND, KIP WILLIAMS,<br><br>        Plaintiffs,<br><br>      vs.<br><br>TEPL, INC. DBA MC ADMINISTRATORS,<br><br>        Defendant. | Case No. 3:12-cv-03069-IEG-BGS<br><br>**DEFENDANT TEPL, INC. DBA MC ADMINISTRATORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**<br><br>Judge:      Hon. Irma E. Gonzalez<br>Courtroom: 4-D<br>Date:       May 20, 2013<br>Time:       10:30 a.m.<br><br>[Complaint Filed: December 28, 2012] |

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ............................................................. 1

II.    LEGAL ARGUMENT ..................................................... 2

    A.    LEGAL STANDARD .......................................... 2

    B.    PLAINTIFFS' FDCPA CLAIM SHOULD BE DISMISSED ....................... 3

        1.    Plaintiffs Fail To Adequately Allege That Defendant Is A "Debt Collector" ............................................ 3

        2.    Plaintiffs Fail To Allege That Their So-Called "Financial Obligations" Were In Default When They Were Obtained By Defendant ................................................. 7

    C.    PLAINTIFFS' RFDCPA CLAIM SHOULD BE DISMISSED ................... 12

        1.    Plaintiffs' Federal Claim Fails As A Matter Of Law And The Court Should Decline To Hear Plaintiffs' State-Law Claim ............. 12

        2.    In The Alternative, Plaintiffs' RFDCPA Claim Fails As A Matter of Law ................................................. 13

            a.    Applicable Statutory Standards ................................ 13

            b.    Plaintiffs Fail To Allege That Defendant Regularly Engages In Debt Collection ..................................... 13

            c.    Plaintiffs Fail To Allege A "Consumer Credit Transaction" .................................................. 14

III.    CONCLUSION ............................................................ 16

i

**CASE NO. 3:12-CV-03069-IEG-BGS**
DEFENDANT TEPL, INC. DBA MC ADMINISTRATORS' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Alamo v. ABC Fin. Servs., Inc.,*
  No. 09–5686, 2011 WL 221766 (E.D. Pa. Jan. 20, 2011)................................................8

*Alibrandi v. Financial Outsourcing Services, Inc.,*
  333 F.3d 82 (2d Cir.2003) ...............................................................................9, 10, 12

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................................3, 5, 7

*Cahill v. Liberty Mut. Ins. Co.,*
  80 F.3d 336 (9th Cir. 1996) ..........................................................................................3

*De Dios v. Int'l Realty & Invs.,*
  641 F.3d 1071 (9th Cir.2011) ..............................................................................8, 9, 10

*Gouskos v. Aptos Village Garage, Inc.,*
  94 Cal.App.4th 754, 114 Cal.Rptr.2d 558 (2001) ...........................................14, 15, 16

*Gyene v. Steward Fin., Inc.,*
  No. 12-cv-4355-DSF-AJWX, 2013 WL 146191 (C.D. Cal. Jan. 11, 2013) ...........7, 10

*Kapsis v. Am. Home Mortg. Servicing Inc.,*
  No. 11-cv-4936-JFB-AKT, 2013 WL 544010 (E.D.N.Y. Feb. 14, 2013) ................8, 9

*Khast v. Washington Mut. Bank,*
  No. 10-CV-2168-IEG-JMA, 2011 WL 940792 (S.D. Cal. Mar. 16, 2011)
  (Gonzalez, J.) ..........................................................................................................4, 12

*Marques v. Fed. Home Loan Mortg. Corp.,*
  No. 12-cv-1873-IEG-MDD, 2012 WL 6091412 (S.D. Cal. Dec. 6, 2012)
  (Gonzalez, J.) .................................................................................................................5

*Martinez v. Quality Loan Serv. Corp.,*
  No. 08-cv-07767-MMM-PJWX, 2009 WL 586725 (C.D. Cal. Feb. 10, 2009)4, 5, 6, 13

*Mitchell v. Kaiser Found. Health Plan, Inc.,*
  No. 09-cv-05306-RS, 2010 WL 5387712 (N.D. Cal. Dec. 22, 2010)............................6

1

**TABLE OF AUTHORITIES**: (continued)                                    Page(s)

2

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ..........................................................................2

3

4

*Neitzke v. Williams*,
   490 U.S. 319 (1989)...........................................................................................2

5

*Nool v. HomeQ Servicing*,
   653 F. Supp. 2d 1047 (E.D. Cal. 2009) ..........................................................6

6

7

*Park v. Aurora Loan Services*,
   No. 10-cv-2692-IEG-WVG, 2011 WL 971597 (S.D. Cal. Mar. 16, 2011)
   (Gonzalez, J.) ...............................................................................................6, 12

8

9

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ...........................................................................3

10

11

*Roberts v. Corrothers*,
   812 F.2d 1173 (9th Cir. 1987) .........................................................................3

12

13

*Robertson v. Dean Witter Reynolds, Inc.*,
   749 F.2d 530 (9th Cir. 1984) ...........................................................................2

14

15

*Sanchez v. U.S. Bancorp*,
   No. 09-CV-00718-IEG-JMA, 2009 WL 3157486 (S.D. Cal. Sept. 25, 2009)
   (Gonzalez, J.) ...........................................................................................passim

16

17

*Schneider v. TRW, Inc.*,
   930 F.2d 986 (9th Cir.1991) ..........................................................................12

18

19

*Simmons v. Med-I-Claims*,
   No. 06-1155, 2007 WL 486879 (C.D. Ill. Feb. 9, 2007)................................8

20

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001), amended by 275 F.3d 1187 (9th Cir. 2001) ...................3

21

22

*Swain v. CACH, LLC*,
   699 F.Supp.2d 1109 (N.D. Cal. 2009)..............................................................6

23

*Thompson v. Davis*,
   295 F.3d 890 (9th Cir. 2002), cert denied, 538 U.S. 921 (2003)....................2

24

iii

<u>**TABLE OF AUTHORITIES**</u>: **(continued)**                                          <u>**Page(s)**</u>

*Toledo v. Keller King & Associates, Inc.*,
    No. 5:10-cv-03821-EJD, 2011 WL 4479528 (N.D. Cal. Sept. 26, 2011) ..................... 6

*Turner v. Hawaii First Inc.*,
    No. 11-cv-00332-ACK, 2012 WL 4903314 (D. Haw. Oct. 15, 2012).................... 7, 11

*Udo v. Kelkris Associates, Inc.*,
    No. 12-cv-2022-IEG NLS, 2012 WL 5985663 (S.D. Cal. Nov. 29, 2012)
    (Gonzalez, J.) .................................................................................................. 14

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966)........................................................................................ 12

*Vega v. Saxon Mortg. Services, Inc.*,
    No. 08-CV-2194-IEG-CAB, 2009 WL 704171 (S.D. Cal. Mar. 16, 2009)
    (Gonzalez, J.) .................................................................................................... 4

*Western Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) ........................................................................... 3

**<u>Statutes</u>**

28 U.S.C. § 1367(c)(3)................................................................................................ 12

Fair Debt Collection Practices Act ("FDCPA"),
    15 U.S.C. § 1692 *et seq.* ..........................................................................passim

Rosenthal Fair Debt Collection Practices Act ("RFDCPA"),
    Cal. Civ.Code § 1788 *et seq*. ...................................................................passim

**<u>Rules</u>**

Federal Rule of Civil Procedure 12(b)(6) ..................................................... 1, 2

Defendant TEPL, Inc. dba MC Administrators ("Defendant") respectfully submits this memorandum of points and authorities in support of its motion to dismiss Plaintiffs' Complaint (the "Complaint" or "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    INTRODUCTION

In the Complaint, Plaintiffs assert claims under each of the Fair Debt Collection Practices Act ("FDCPA," 15 U.S.C. § 1692 *et seq.*) and California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA," Cal. Civ.Code § 1788 *et seq.*).  Each of these claims should be dismissed for several reasons.

First, Plaintiffs fail to provide any factual allegations raising a plausible inference that Defendant is a "debt collector" as defined by either of those statutes.  Notably absent from the Complaint are any factual allegations whatsoever, beyond formulaic regurgitations of statutory text, regarding:  (i) the nature of Defendant's business; (ii) the nature of the so-called "financial obligations" underlying Defendant's alleged collection efforts; (iii) how, when or why Defendant entered the collection picture; (iv) Defendant's role in connection with the alleged collection efforts; and/or (v) any other facts that would permit a plausible inference that Defendant was a "debt collector" under the FDCPA or RFDCPA.  (*See infra* Parts II.B.1 & II.C.2.b.)

Second, Plaintiffs fail to allege—in even conclusory form—that Defendant is a "debt collector" under the FDCPA.  Specifically, in attempting to allege Defendant's "debt collector" status under both the FDCPA and the RFDCPA, Plaintiffs regurgitate only the relevant statutory definition from the RFDCPA, which is *broader* than that of the FDCPA.  Thus, while Plaintiffs conclusorily allege that Defendant is a "debt

1   collector" under the RFDCPA, they fail altogether to allege—in even conclusory form—

2   that Defendant is "debt collector" under the FDCPA.  (*See infra* Part II.B.1.)

3   Third, Plaintiffs' FDCPA claim should be dismissed for the additional reason that

4   Plaintiffs fail to allege that their so-called "financial obligations" were "in default" when

5   acquired by Defendant.  (*See infra* Part II.B.2.)

6   Finally, Plaintiffs' RFDCPA claim should be dismissed for the additional reasons

7   that:  (i) the Court should decline to exercise jurisdiction over Plaintiffs' state law claims

8   after dismissing their federal claims (*see infra* Part II.C.1); and (ii) Plaintiffs fail to allege

9   that they ***acquired*** anything ***on credit***, and therefore fail to allege a "consumer credit

10  transaction," as required by the RFDCPA (*see infra* Part II.C.2.c).

11  **II.   LEGAL ARGUMENT**

12  **A.   LEGAL STANDARD**

13  A Rule 12(b)(6) motion tests the sufficiency of the complaint.  *See Navarro v.*

14  *Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is warranted under Rule 12(b)(6)

15  where the complaint lacks a cognizable legal theory.  *Robertson v. Dean Witter Reynolds,*

16  *Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989)

17  ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of

18  law.").  Alternatively, a complaint may be dismissed where it presents a cognizable legal

19  theory yet fails to plead essential facts under that theory.  *Robertson*, 749 F.2d at 534.

20  In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the

21  truth of all properly pled factual allegations and must construe them in the light most

22  favorable to the nonmoving party.  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.

23  2002), cert denied, 538 U.S. 921 (2003); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

24

337-38 (9th Cir. 1996).  While the allegations of the complaint are generally accepted as true, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] plaintiff's obligation to provide 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (internal quotation and citation omitted).

Further, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.  *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), amended by 275 F.3d 1187 (9th Cir. 2001).  When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998).  For the reasons set forth below, application of these standards compels dismissal of Plaintiffs' Complaint.

## B.     PLAINTIFFS' FDCPA CLAIM SHOULD BE DISMISSED

### 1.     Plaintiffs Fail To Adequately Allege That Defendant Is A "Debt Collector"

"To state a claim for violation of the FDCPA, a plaintiff must allege sufficient facts to establish that the defendant is a debt collector within the meaning of the statute."

*Martinez v. Quality Loan Serv. Corp.*, No. 08-cv-07767-MMM-PJWX, 2009 WL 586725, at *3 (C.D. Cal. Feb. 10, 2009); *see also Khast v. Washington Mut. Bank*, No. 10-CV-2168-IEG-JMA, 2011 WL 940792, at *3 (S.D. Cal. Mar. 16, 2011) (Gonzalez, J.) ("[T]o face liability under the FDCPA, a defendant must be a "debt collector" as defined by 15 U.S.C. § 1692a(6)) (citation omitted); *Sanchez v. U.S. Bancorp*, No. 09-CV-00718-IEG-JMA, 2009 WL 3157486, at *5 (S.D. Cal. Sept. 25, 2009) (Gonzalez, J.) ("To be liable for a violation of the FDCPA . . . , a defendant must, as a threshold matter, be a "debt collector" within the meaning of [that] act[].") (citation omitted); *Vega v. Saxon Mortg. Services, Inc.*, No. 08-CV-2194-IEG-CAB, 2009 WL 704171, at *3 (S.D. Cal. Mar. 16, 2009) (Gonzalez, J.) ("To state a claim for violation of the FDCPA, a plaintiff must allege that the defendant is a 'debt collector' collecting a 'debt.'").

The FDCPA defines "debt collector," in pertinent part, as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).

Here, in attempting to allege Defendant's "debt collector" status under both the FDCPA and the RFDCPA, Plaintiffs regurgitate only the RFDCPA's statutory definition of "debt collector."  Specifically, Plaintiffs allege that "Defendant, in the ordinary course of business, regularly, on behalf of themselves or others, engage in 'debt collection.'" (Compl. ¶ 15.)  *Cf.* Cal. Civ.Code § 1788.2(c) ("The term 'debt collector' means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection.").

4

**CASE NO. 3:12-CV-03069-IEG-BGS**
DEFENDANT TEPL, INC. DBA MC ADMINISTRATORS' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT

In doing so, Plaintiffs overlook that "[t]he definition of 'debt collector' found in the state statute is broader than that contained in the FDCPA." *Martinez.*, 2009 WL 586725, at *4. Specifically, while the RFDCPA's definition of "debt collector" encompasses persons who "***regularly***" engage in debt collection "***on behalf of themselves or others***," Cal. Civ.Code § 1788.2(c), "[c]ourts have found that a defendant is not a 'debt collector' within the meaning of the FDCPA when the plaintiff does not adequately allege that the defendant was '(1) a person whose ***principal business*** is the collection of debts (whether on behalf of himself or others); or (2) a person who regularly collects debts ***on behalf of others*** (whether or not it is the principal purpose of his business),'" *Marques v. Fed. Home Loan Mortg. Corp.*, No. 12-cv-1873-IEG-MDD, 2012 WL 6091412, at *7 (S.D. Cal. Dec. 6, 2012) (Gonzalez, J.) (emphasis added; citation omitted); *see also Martinez.*, 2009 WL 586725, at *4.

Because Plaintiffs fail to allege, in even conclusory form, (i) that the "***principle purpose***" of Defendant's "business is the collection of debts"; or (ii) that Defendant "'regularly' collects debts ***on behalf of others***," their FDCPA claim must be dismissed. *See id*.

What's more, even had Plaintiffs conclusorily alleged Defendant's "debt collector" status under the FDCPA—and they did not—such a conclusory allegation would clearly be insufficient to state a claim. Relying on *Twombly*, 550 U.S. at 555, federal courts have uniformly dismissed FDCPA claims where the complaint simply parrots the statutory definition of "debt collector" without providing additional supporting facts regarding the defendant's business practices, the type of debt underlying the case, the frequency of the collection attempts, or other necessary facts to raise a plausible inference that the

defendant meets the statutory definition of a "debt collector."  *See*, *e.g.*, *Sanchez*, 2009 WL 3157486, at *5 (granting motion to dismiss where "the complaint is completely devoid of any facts regarding [defendant's] business practices, as a debt collector or otherwise"); *Martinez.*, 2009 WL 586725, at *3 ("In the absence of supporting facts, the court need not accept plaintiff's conclusory legal allegation that [defendant] is a debt collector as defined by the statute."); *Mitchell v. Kaiser Found. Health Plan, Inc.*, No. 09-cv-05306-RS, 2010 WL 5387712, at *6 (N.D. Cal. Dec. 22, 2010) ("A mere assertion that defendants 'are debt collectors without providing any supporting facts demonstrating that they engage in a business the principal purpose of which is the collection of debts' is insufficient to state a claim for relief under the FDCPA.") (quoting *Swain v. CACH, LLC*, 699 F.Supp.2d 1109, 1112–13 (N.D. Cal. 2009)); *see also Toledo v. Keller King & Associates, Inc.*, No. 5:10-cv-03821-EJD, 2011 WL 4479528, at *6 (N.D. Cal. Sept. 26, 2011).

Significantly, "there are 'debt collectors' that courts have treated as exempt from the FDCPA." *Toledo*, 2011 WL 4479528, at *6.  For example, "[n]either a consumer's creditors, a mortgage servicing company, nor any assignee of the mortgage debt may face liability under the FDCPA because they are not considered 'debt collectors' as defined by the act." *Park v. Aurora Loan Services*, No. 10-cv-2692-IEG-WVG, 2011 WL 971597, at *2 (S.D. Cal. Mar. 16, 2011) (Gonzalez, J.) (citation omitted); *see also Nool v. HomeQ Servicing*, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009).  "For this reason, allegations describing both the type of debt and the frequency of the collection attempts are necessary to plead that Defendant is a 'debt collector' under the FDCPA." *Toledo*, 2011 WL 4479528, at *6 (citations omitted).

The Complaint here contains no such factual allegations. It says nothing about Defendant's business practices, nothing about the nature of the "financial obligations" Plaintiffs allegedly incurred, nothing about any communications from Kaiser Permanente ("Kaiser") and/or defendant, and contains no other facts necessary make Plaintiffs' claim for relief plausible. In fact, Plaintiffs do not allege—even in conclusory form—that Defendant satisfies the FDCPA's definition of "debt collector." Under these circumstances, the Court should dismiss Plaintiffs' FDCPA claim. *See e.g.*, *Sanchez*, 2009 WL 3157486, at *6 ("Plaintiff's conclusory labeling of WMC as a 'debt collector,' without further substantiation, fails to state a claim under the RFDCPA") (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")).

### 2. Plaintiffs Fail To Allege That Their So-Called "Financial Obligations" Were In Default When They Were Obtained By Defendant

The FDCPA excludes from its definition of "debt collector" "'any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). Thus, to state a claim under the FDCPA, a plaintiff must "allege facts sufficient to show that [the alleged debt was] legally in default" when it was acquired by the defendant. *Gyene v. Steward Fin., Inc.*, No. 12-cv-4355-DSF-AJWX, 2013 WL 146191, at *8 (C.D. Cal. Jan. 11, 2013); *see also Turner v. Hawaii First Inc.*, No. 11-cv-00332-ACK, 2012 WL 4903314, at *8 (D. Haw. Oct. 15, 2012) (granting motion to dismiss where "Plaintiffs' First Amended

7

CASE NO. 3:12-CV-03069-IEG-BGS
DEFENDANT TEPL, INC. DBA MC ADMINISTRATORS' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT

Complaint does not contain allegations sufficient to show that Plaintiffs' Debt was in default at the time that Defendant acquired it").

"[T]he determination of whether a debt [is] in default is to be made on a case-by-case basis." *Kapsis v. Am. Home Mortg. Servicing Inc.*, No. 11-cv-4936-JFB-AKT, 2013 WL 544010, at *10 (E.D.N.Y. Feb. 14, 2013). The Ninth Circuit has explained that "[a]lthough the FDCPA does not define 'in default,' courts interpreting [the FDCPA] look to any underlying contracts and applicable law governing the debts at issue." *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1074 (9th Cir.2011) (citing *inter alia* Fed Trade Comm'n, Advisory Op. n. 2 (Apr. 25, 1989) ("Whether a debt is in default is generally controlled by the terms of the contract creating the indebtedness and applicable state law.")); *see also Alamo v. ABC Fin. Servs., Inc.*, No. 09–5686, 2011 WL 221766, at *5 (E.D. Pa. Jan. 20, 2011) (stating that "[b]ecause no statutory definition exists, several district courts have addressed the issue of what constitutes a default under the FDCPA by looking to the contractual provisions governing the underlying debt between the consumer and the creditor," and deeming the contractual language in that case—"[a] default occurs when any payment due under this agreement is more than ten days late"—determinative on the question of the timing of default); *Simmons v. Med-I-Claims*, No. 06-1155, 2007 WL 486879, at *7 (C.D. Ill. Feb. 9, 2007) ("The Court recognizes that in many contractual debtor-creditor relationships, a provision of the written agreement will dictate when the debt is considered in default, rather than simply outstanding.").

Where no underlying contracts or applicable law describe a "default" of the relevant debt, courts have consistently held that late payments, standing alone, do not make the relevant debt "in default" for the purposes of the FDCPA. *See*, *e.g.*, *Alibrandi*

1   *v. Financial Outsourcing Services, Inc.*, 333 F.3d 82, 86 (2d Cir.2003); *McKinney v.*

2   *Cadleway Properties, Inc.*, 548 F.3d 496, 502 (7th Cir. 2008) ("The Second Circuit has

3   observed in this context that delinquency and default are two distinct concepts"); *Brown*

4   *v. Saxon Mortg. Services, Inc.*, 2:05-CV-141, 2005 WL 3244295 (S.D. Ohio Nov. 30,

5   2005) (granting motion to dismiss because an allegation of "late payment . . . is not

6   sufficient to allege that the loan was in default"); *Kapsis*, 2013 WL 544010, at *7

7   ("default does not occur immediately after payment becomes due, but rather occurs some

8   period of time after a debt becomes outstanding"); *see also De Dios*, 641 F.3d at 1075 n.

9   3 (stating in dicta that the FDCPA's legislative history "is consistent with construing 'in

10   default' to mean a debt that is at least delinquent, and sometimes more than overdue").

11        In *Alibrandi*, the Second Circuit rejected the position that, for the purposes of the

12   FDCPA, the "debt was in default immediately after it became due," and instead held that

13   default "does not occur ***until well after a debt becomes outstanding***." 333 F.3d at 85, 87

14   (emphasis added). Equating "outstanding" with "past due," *id*. at 86 n. 4, the Court

15   explained as follows:

16              In applying the FDCPA, courts have repeatedly distinguished
                between a debt that is in default and a debt that is merely

17              outstanding, emphasizing that only after some period of time
                does an outstanding debt go into default. In cases involving

18              student loan collections under the FDCPA, for example, courts
                have regularly imported a Federal Family Education Loan

19              Program ("FFELP") definition of "default," under which a debt
                that is repayable in monthly installments goes into default after

20              180 days of delinquency. Likewise, various other federal
                regulations have defined default as commencing anywhere

21              between thirty and 270 days after a debt becomes due.
                Although these judicial decisions and regulations reflect

22              inconsistent periods of time preceding default, ***they all agree***
                ***that default does not occur until well after a debt becomes***

23              ***outstanding***.

24

1   *Id.* at 86-87 (emphasis added).

2        The *Alibrandi* Court further noted that the plaintiff's position, that the debt was in

3   default immediately after it became due, would have "the paradoxical effect of

4   immediately exposing debtors to the sort of adverse measures, such as acceleration,

5   repossession, increased interest rates, and negative reports to credit bureaus, from which

6   the [FDCPA] intended to afford debtors a measure of protection."  *Id.*

7        Here, Plaintiffs fail to allege any facts to permit the Court to reasonably infer that

8   their so-called "financial obligations" were "in default" when obtained by Defendant.

9   Among other things, the Complaint contains no allegations regarding the nature of those

10   "financial obligations," let alone whether any contracts or laws apply to them.  *Cf. De*

11   *Dios*, 641 F.3d at 1074 ("courts interpreting [the FDCPA] look to any underlying

12   contracts and applicable law governing the debts at issue").  In short, Plaintiff fail to

13   allege facts sufficient for the Court to determine whether a default has occurred and the

14   Court should dismiss the claim.  *See Gyene*, 2013 WL 146191, at *9 ("Plaintiffs fail to

15   point to specific contractual provisions governing their loans or communications between

16   Plaintiffs and Wells Fargo and Ocwen stating that their loans were actually in default. As

17   they have not pleaded facts sufficient to permit the court to draw the reasonable inference

18   that their loans were legally in default at the time they were taken for servicing, their

19   claim must be dismissed.").

20        Interestingly, Plaintiffs' allegation that their original creditor was Kaiser (Compl. ¶

21   19), a healthcare insurer, raises the possible (if somewhat speculative) inference that

22   Plaintiffs' alleged "financial obligations" were health insurance premium payments.

23   Collection of health insurance premiums are heavily regulated, and there likely exist laws

24

or regulations regarding late payments and/or default of such payments.  Under these conditions, Plaintiffs' failure to provide any facts regarding the nature of their alleged "financial obligations," and/or any applicable contracts or law is plainly insufficient to state a claim.

What's more, even if the Court were to indulge in the speculation that no contracts or laws govern "default" with respect to Plaintiffs' so-called "financial obligations"—and it should not—plaintiffs' allegation of "missed payments" (Compl. ¶ 21) would *still* be insufficient to state a cause of action.  Significantly, this allegation, standing alone, is consistent with their payments being just one day late.[1]

More fundamentally, however, the Complaint fails to allege when the payments allegedly became due, how many days delinquent they were, how many payments were missed, whether Plaintiff received any letters or notices from Kaiser and/or Defendant discussing the allegedly overdue payments and/or characterizing such missed payments as due, overdue, delinquent and/or in default, or any other facts that would permit the Court to reasonably infer that Plaintiffs' "financial obligations" were legally in default— as opposed to merely outstanding—when acquired by Defendant.  Under these conditions, Plaintiffs' FDCPA claim must be dismissed.  *See supra* (citing cases); *see also Turner*, 2012 WL 4903314, at *7 ("[i]n applying the FDCPA, courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding,

---

[1] Plaintiffs' pluralization of "payments" (*see* Compl. ¶ 21 ("Plaintiffs allegedly fell behind in the payments allegedly owed on the alleged debt")) can mean one missed payment by multiple Plaintiffs, rather than multiple missed payments.

11

emphasizing that only after some period of time does an outstanding debt go into default.") (quoting *Alibrandi*, 333 F.3d at 86).

### C.  PLAINTIFFS' RFDCPA CLAIM SHOULD BE DISMISSED

#### 1.  Plaintiffs' Federal Claim Fails As A Matter Of Law And The Court Should Decline To Hear Plaintiffs' State-Law Claim

Plaintiffs assert federal question subject matter jurisdiction over their federal law claims and supplemental jurisdiction over their state law claims.  *See* Compl. ¶ 8 ("Jurisdiction of this Court arises pursuant to 28 U.S.C. §1331 and 15 U.S.C. § 1692k."). Should the Court dismiss Plaintiffs' federal claim, it has full discretion to decide whether to exercise supplemental jurisdiction over the remaining state law claim.  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right."); *Schneider v. TRW, Inc.*, 930 F.2d 986, 994 (9th Cir.1991); *Khast*, 2011 WL 940792, at *4.  "When deciding whether to exercise supplemental jurisdiction, the Court considers judicial economy, convenience and fairness to litigants, and comity with state courts."  *Khast*, 2011 WL 940792, at *4 (citation omitted).  "Where federal claims have been dismissed, the balance of factors usually tips in favor of declining to exercise jurisdiction over the remaining state law claims and dismissing them without prejudice."  *Id.* (citation omitted).  Thus, in the event the Court dismisses Plaintiffs' FDCPA claim, it should dismiss their RFDCPA claim without prejudice.  *See id.* (dismissing pendant state law claims after dismissing FDCPA and other federal claims); *Park*, 2011 WL 971597, at *2 ("Having dismissed Plaintiffs' claim under the FDCPA and finding no diversity jurisdiction in Plaintiff's

complaint, the Court declines to exercise supplemental jurisdiction over Plaintiffs'
remaining state law claims.").

### 2. In The Alternative, Plaintiffs' RFDCPA Claim Fails As A Matter of Law

#### a. Applicable Statutory Standards

"Like the FDCPA, the RFDCPA applies only to debt collectors." *Martinez.*, 2009
WL 586725, at \*4. "The RFDCPA defines a 'debt collector' as 'any person who, in the
ordinary course of business, regularly, on behalf of himself or herself or others, engages
in debt collection,' defined as 'any act or practice in connection with the collection of
consumer debts.'" *Id.* (quoting Cal. Civ.Code § 1788.2(b), (c)). "Consumer debt" is
defined as "money, property or their equivalent, due or owing or alleged to be due or
owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code
§ 1788.2(f). "Consumer credit transaction" is defined as "a transaction between a natural
person and another person in which property, services or money is acquired on credit by
that natural person from such other person primarily for personal, family, or household
purposes." Cal. Civ. Code § 1788.2(e).

#### b. Plaintiffs Fail To Allege That Defendant Regularly Engages In Debt Collection

As shown above (*supra* Part II.B.1), "although the [C]omplaint alleges in a
conclusory manner that Defendant[ is] a "debt collector[]" under [the RFDCPA], the
complaint's sparse facts do not support this allegation." *Sanchez*, 2009 WL 3157486, at
\*5. Among other things, the Complaint contains no supporting facts regarding
Defendant's business practices, the type of debt underlying the case, the frequency of the
collection attempts, or other necessary facts to raise a plausible inference that Defendant

meets the statutory definition of a "debt collector."  As such, Plaintiffs fail to state a

claim under the RFDCPA.  *See id.* ("Plaintiff's conclusory labeling of WMC as a "debt

collector," without further substantiation, fails to state a claim under the RFDCPA.")

(citation omitted).

        **c.**        **Plaintiffs Fail To Allege A "Consumer Credit Transaction"**

"'[T]he RFDCPA only applies to transactions "in which property, services or

money is acquired on credit."'"  *Udo v. Kelkris Associates, Inc.*, No. 12-cv-2022-IEG

NLS, 2012 WL 5985663, at *2 (S.D. Cal. Nov. 29, 2012) (Gonzalez, J.) (citations

omitted).  "Thus, to state a claim, Plaintiff must allege that Defendant 'attempt[ed] to

collect a debt arising from a 'consumer credit transaction.'"  *Id.* (citations omitted).

"[T]here is a consumer credit transaction when the consumer acquires something without

paying for it." *Gouskos v. Aptos Village Garage, Inc.*, 94 Cal.App.4th 754, 759, 114

Cal.Rptr.2d 558 (2001).

Here, the Complaint contains no allegations permitting a plausible inference that

Plaintiffs acquired anything on credit, i.e., "without paying for it."  In this regard, the

Complaint alleges only as follows:

> In or about 2010, Plaintiffs allegedly incurred financial
> obligations to the original creditor, Kaiser Permanente, that
> were money, property, or their equivalent, which is due or
> owing, or alleged to be due or owing, from a natural person to
> another person and were therefore "debt(s)" as that term is
> defined by California Civil Code §1788.2(d), and a "consumer
> debt" as that term is defined by California Civil Code
> §1788.2(f).

(Compl. ¶ 19.)

Notably absent, however, is any allegation that Plaintiffs *acquired* anything, much less *on credit*. Cal. Civ. Code § 1788.2(e).  Significantly, because Kaiser is a health insurer, Plaintiffs' alleged "financial obligations" to Kaiser may very well have been ongoing health insurance premium payments, which typically are paid *in advance* of receiving insurance coverage.  As such, Plaintiffs' alleged "financial obligations" would not have resulted from Plaintiffs acquiring anything.  What's more, these so-called "financial obligations" would not have resulted from any *credit* transaction, since, among other things, any failure to pay premiums results only in the cancelation of the relevant insurance policy, and not any personal debt. *See Udo*, 2012 WL 5985663, at *2 (dismissing complaint where no credit transaction alleged).

In *Gouskos*, the plaintiffs argued unsuccessfully that an automobile repair transaction constituted a "consumer credit transaction" (which, in turn, might arguably qualify defendants as "debt collectors") because defendants "provided both goods and services" in advance, before receiving payment.  94 Cal.App.4th at 759.  The Court disagreed, explaining as follows:

> "The first step in construing a statute is to examine the actual language of the statute.  We give the words of the statute their ordinary, everyday meaning, unless, of course, the statute itself specifically defines the words otherwise,  If the meaning is without ambiguity, doubt, or uncertainty, then the language controls and there is nothing to interpret."
>
> Section 1788.2, subdivision (e), does not state that a consumer credit transaction means a transaction where a person provides property or services in advance of payment. The section states that a consumer credit transaction means a transaction where a person acquires property or services on credit. In other words, there is a consumer credit transaction when the consumer acquires something without paying for it.

> We venture that in the automobile repair context there rarely would exist a consumer credit transaction because repair shops typically do not release repaired vehicles without payment; thus a vehicle owner would typically not acquire a shop's property or service until the property or service is paid for and he or she regains his or her own property.
>
> Here, of course, it is axiomatic that [plaintiff] never acquired property or services from defendants because he never regained his Mustang. The Act therefore does not apply to this case. The trial court therefore properly granted defendants' motion for directed verdict."

*Gouskos*, 94 Cal.App.4th at 759-760 (citations omitted).

The same reasoning applies here.  Because Plaintiffs fail to allege that they "acquire[d]" anything, much less that they did so "without paying for it," they have not stated a claim under the RFDCPA and that claim should be dismissed.

## III.   CONCLUSION

For the reasons shown above, TEPL, Inc. dba MC Administrators respectfully requests that the Court:  (i) dismiss the Plaintiffs' Complaint in its entirety; and (ii) grant such other and further relief as the Court may deem just a proper.

Dated:  April 9, 2013                    SILVER & SILVER APC


                                         ___s/ Levi Y. Silver_____
                                         Levi Y. Silver
                                         Email:  lsiver@silverlawfirm.com

                                         *Attorneys for Defendant*
                                         *TEPL, Inc. dba MC Administrators*

16